# COURT OF APPEALS
# DECISION
# DATED AND FILED

## March 3, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.   **2024AP705-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF2243

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MARION LARUE PATTILLO,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: REBECCA A. KIEFER, Judge. *Affirmed*.

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Marion Larue Pattillo appeals the judgment convicting him of physical abuse of a child (repeated acts causing bodily harm), felony intimidation of a witness, and disorderly conduct as an act of domestic abuse. Pattillo argues the evidence was insufficient to support the convictions for physical abuse of a child and felony intimidation of a witness.[1] We disagree and affirm.

## I. BACKGROUND

¶2 A jury convicted Pattillo of multiple crimes stemming from injuries he inflicted on Donald, who was four years old at the time.[2] The convictions included repeated physical abuse of a child, based on Pattillo's abuse of Donald, and felony intimidation of a witness, based on a threat Pattillo made to Donald's half-sister, Debbie, not to tell anyone about the abuse.

¶3 At trial, the jury heard testimony that on June 19, 2020, Donald's mother, Cindi, called police to report that Pattillo, her live-in boyfriend and the father of one of her children, had given Donald two black eyes, a golf-ball-sized knot on his head, and other injuries. A pediatrician examined Donald that day and concluded that his injuries were indicative of abuse based on their severity and locations. The pediatrician, who was qualified as a child abuse expert, testified to her observations of the following injuries:

---

[1] Pattillo does not challenge the disorderly conduct conviction.

[2] The parties use the pseudonyms identified herein in their briefing. Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), we will do the same.

All references to the Wisconsin Statutes are to the 2023-24 version.

- Donald had two black eyes, usually caused by blunt force impact. The pediatrician testified that the eyes are a protected area on the body and that if a child's eye was injured by accidental means, "it would be only one side[.]" The pediatrician testified that two black eyes raised concerns for abuse.

- Donald had swelling to his head and injuries to and behind his ears. The pediatrician opined that based on the severity and location of those injuries, they were caused by "a large amount of force," such as a punch, kick, or slam, not the amount of force one would see "with taking care of a child, or normal discipline, or anything like that[.]" She testified that ears, like eyes, are a protected area and are rarely injured accidentally.

- Donald had two unexplained fractures. One was in his right upper arm that the pediatrician noted was then "in the very, very early stages of healing," which she estimated as "definitely within two weeks." Donald also had a fractured rib that the pediatrician estimated had occurred "that day, but it could have been maybe up to a week before" she examined Donald.

¶4 Donald's older twin siblings, David and Debbie, also testified, and the jury viewed forensic interviews that they participated in when Donald's injuries were first reported. At the time Pattillo was abusing Donald, David and Debbie were eleven years old. They lived in the home with Pattillo, Cindi, Donald, and a baby brother. Cindi worked two jobs. As a result, the children were frequently in Pattillo's care without Cindi present.

3

¶5    Both David and Debbie testified that Pattillo regularly beat and mistreated Donald for minor occurrences such as urinating on himself or taking food from the refrigerator.  The following exchange took place when Debbie testified:

> [Prosecutor]: How often did [Pattillo] hit [Donald], specifically around the week that the police came?
>
> [Debbie]:  A lot.
>
> [Prosecutor]: Would you say it was one day that week? Two days that week? Three? Four? Everyday that week?
>
> [Debbie]:  It depends because, like, if he peed on himself, it was a lot, but if it wasn't and it was just like a regular day and he didn't pee on himself, it was, like, always, like, sometimes every two hours or three.
>
> [Prosecutor]:  So was it everyday but every two hours?
>
> [Debbie]: Yeah. Yes.
>
> [Prosecutor]:  So [Patillo] hit [Donald] everyday, but how many times that day depended on if he peed on himself?
>
> [Debbie]:  Yes.
>
> [Prosecutor]: And if he did pee on himself, how many times that day would [Donald] get hit?
>
> [Debbie]:  He'll be in the corner and then always get called on, and then, like, he always somehow, like, get beat, like, a lot and then go back in the corner and put his hands up.

An officer who responded to Cindi's call testified that Debbie told him Pattillo had choked Donald until Donald was unconscious earlier that week.

¶6    David and Debbie testified that Pattillo did not abuse them or mistreat them like he did with Donald.  Debbie testified that Pattillo told her that she would "get in trouble" if she told anyone about what he did to Donald.  Debbie testified that she understood Pattillo's threat to mean "[n]ot being able to eat or,

like, get treated how [Donald] was [treated]." She confirmed that when Pattillo told her she would get in trouble, she was afraid what was happening to Donald would happen to her.

¶7 Cindi testified that she confronted Pattillo the morning she saw Donald's black eyes and the knot on his head. Pattillo was evasive about what had happened. Cindi testified that when she persisted, Pattillo reacted with violence, flipping over a table, taking Cindi's phone to prevent her from calling police, and throwing a metal water bottle at Cindi so hard that it made a hole in the wall. Pattillo then packed some belongings, called his sister, told his sister that he beat Donald for peeing on himself, and left before police arrived. Trial testimony revealed that Pattillo was located in Iowa a year later and extradited to Wisconsin.

¶8 After the State rested its case, Pattillo moved for dismissal as a directed verdict. The circuit court denied the motion, and the defense rested without presenting any evidence. Following the jury's guilty verdicts, Pattillo moved for judgment notwithstanding the verdicts. The court denied that motion as well. Pattillo appeals.

## II. DISCUSSION

¶9 The issue on appeal is whether the evidence was sufficient to support Pattillo's convictions for repeated acts of physical abuse of Donald and felony intimidation of Debbie. "The question of whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law, subject to our de novo review." *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

¶10 "[A] defendant challenging the sufficiency of the evidence bears a heavy burden to show the evidence could not reasonably have supported a finding of guilt." *State v. Beamon*, 2013 WI 47, ¶21, 347 Wis. 2d 559, 830 N.W.2d 681. We will sustain a verdict unless the evidence "is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). The sufficiency of the evidence test is the same regardless of whether the evidence is direct or circumstantial. *Id.* at 501. In reviewing sufficiency, we examine the totality of the evidence, view it in the light most favorable to the State and the verdict, and adopt reasonable inferences supporting the verdict; where more than one reasonable inference may be drawn, the inference supporting the verdict controls. *Smith*, 342 Wis. 2d 710, ¶¶24, 33, 36.

¶11 We first address the sufficiency of the evidence to establish three separate acts in which Pattillo intentionally caused Donald bodily harm during the timeframe from June 6, 2020, through June 19, 2020. Pattillo submits that on this record, no reasonable trier of fact could have found that three separate qualifying acts occurred during the specified period of time. He argues that the jury's findings hinged on unreasonable inferences.

¶12 The State needed to prove three acts where Pattillo intentionally caused bodily harm to Donald and that the acts took place within the specified period of time. WIS. STAT. § 948.03(2)(b), (5)(a)-(b); WIS JI—CRIMINAL 2114A (2019). To establish that Pattillo intentionally caused bodily harm to Donald, the State had to prove: (1) Pattillo caused Donald bodily harm, i.e., physical pain or injury or any impairment of physical condition; (2) Pattillo intentionally caused that bodily harm, i.e., Pattillo had the mental purpose to cause bodily harm or the

awareness that his conduct was practically certain to cause that result; and (3) Donald was under eighteen years old. WIS JI—CRIMINAL 2109.

¶13    The jury did not need to unanimously agree about which three acts constituted the physical abuse. WIS. STAT. § 948.03(5)(b); WIS. JI—CRIMINAL 2114A. The jury merely had to agree that all three acts of physical abuse occurred during the specific time period at issue, which here was June 6 through June 19, i.e., the two-week period ending when Cindi called police and the pediatrician observed Donald's injuries.

¶14    The record contains numerous statements by witnesses supporting findings that Pattillo physically abused Donald many times during the two-week period at issue. For example, David testified that the week leading up to June 19, he heard Donald crying and Pattillo hitting Donald with his hand and with a plastic bat. David also testified that Donald had bruises on his face and body that week.

¶15    Additionally, the jury heard expert testimony from a pediatrician and saw photographs of the numerous visible bruises and other injuries on Donald's body on June 19. The jury could find that those injuries were less than two weeks old.

¶16    The jury also heard Debbie's testimony that Pattillo hit and abused Donald "every[ ]day." She did not exclude the two-week period before police arrived on June 19. A police officer who responded to the residence on June 19 said that Debbie told him Pattillo choked Donald until he was unconscious earlier in the week.

¶17    Cindi testified that on the morning of June 19, Donald had two black eyes and a golf-ball sized knot on his head; when she asked Pattillo how that had

happened, Pattillo would not answer her. That testimony supports the reasonable inference that Pattillo caused those injuries to Donald within hours or a day of Cindi's seeing them.

¶18 Pattillo contends that some of the evidence merely "assert[ed] injury untied to causation." According to Pattillo, while the evidence of injury existed, it necessitated "unreasonable inference[s] to satisfy proof beyond a reasonable doubt that [he] caused the injuries, and did so intentionally." We disagree with Pattillo's categorization of the involved inferences as unreasonable. Circumstantial evidence and reasonable inferences suffice, and where competing inferences exist, we accept the one supporting the verdict. *See* ***Poellinger***, 153 Wis. 2d at 507-08. We conclude that the jury had more than sufficient evidence—both direct and circumstantial—to find three separate acts in which Pattillo intentionally caused Donald bodily harm during the timeframe at issue.

¶19 Next, we address whether the evidence was sufficient to support Pattillo's conviction for felony intimidation of Debbie. To find Pattillo guilty of intimidating Debbie, the jury needed to find the following elements: (1) Debbie was a witness; (2) Pattillo attempted to prevent or dissuade Debbie "from attending or giving testimony at a proceeding authorized by law"; and (3) Pattillo acted knowingly and maliciously. WIS. STAT. § 940.42; WIS JI—CRIMINAL 1292. In addition, to find that the crime was a felony, as opposed to a misdemeanor, the jury had to find that Pattillo's attempt to prevent or dissuade Debbie was "accompanied by any express or implied threat of force, violence, injury[,] or damage[.]" WIS. STAT. § 940.43(3); WIS JI—CRIMINAL 1292.

¶20 Pattillo's conviction for this crime stems from his statement to Debbie that she would get in trouble if she told anyone what he did to Donald.

Pattillo contends that Debbie's unwavering testimony that he only said she would get into trouble and the lack of any testimony reflecting that he threatened force, violence, or injury toward her provided insufficient evidence for a jury to find proof beyond a reasonable doubt that he was guilty of the felony offense.

¶21    Pattillo ignores Debbie's testimony that she understood "get in trouble" to mean that she would "get treated how [Donald] was." She testified: "[Pattillo] said that we can't tell nobody, or we would get in trouble, but trouble was, I thought, what was happening to [Donald]." During trial, Debbie described Pattillo beating Donald regularly.

¶22    The evidence supported the reasonable inference that Debbie understood Pattillo's saying she would get into trouble to be an implied threat of physical violence and abuse against her. Contrary to Pattillo's assertions on appeal, nothing more was needed.

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.